## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| DEBRA WEINSTEIN, residing at 400 Char Sam Circle, Chester Springs, PA 19425, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., 10400 Fernwood Road, Bethesda, MD 20817 AND STARWOOD HOTEL & RESORTS, LLC, One Starpoint, Stamford, CT 06902,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Debra Weinstein ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendants Marriott International, Inc. ("Marriott"), a Delaware Corporation, headquartered in Bethesda, Maryland, and Starwood Hotels & Resorts Worldwide, LLC ("Starwood"), a Maryland corporation, headquartered in Stamford Connecticut (collectively, "Defendants"). Plaintiff's allegations are based upon personal knowledge as to her own acts and upon information and belief as to all other matters alleged herein, including the investigation of counsel, publically available information, news articles, press releases, and additional analysis. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     Plaintiff brings this class action on behalf of herself and all persons whose personal information was compromised as a result of the data breach announced by Marriott on or about November 30, 2018 (the "Class").

2.      Headquartered in Bethesda, Maryland, Marriott is a multinational hospitality company that manages and franchises a broad portfolio of hotels and lodging facilities. Marriott has more than 6,500 properties in 127 countries and territories around the world.

3.      Starwood is a subsidiary of Marriott. On September 23, 2016, Marriott purchased Starwood for $13.6 billion, creating the world's largest hotel chain with over 1.2 million rooms.

4.      Millions of consumers have booked hotel rooms through Defendants and have provided sensitive and personal information to Defendants in connection with these bookings.

5.      Defendants have collected millions of records containing sensitive and personal information, including that of Plaintiff and members of the Classes (defined below), and maintain that information through an extensive guest reservation database. Defendants' guest reservation database houses personally identifying information including, *inter alia*, names, mailing addresses, passport numbers, phone numbers, email addresses, account information, date of birth, gender, arrival and departure information, reservation dates, communication preferences, and credit card and debit card numbers, with expiration dates and associated information ("Personally Identifying Information" or "PII").

6.      Plaintiff and members of the Classes were required to provide and did provide their PII to Defendants in order to reserve or purchase hotel rooms sold under the Marriott brands. Plaintiff and members of the Classes provided and entrusted their PII to Defendants with the understanding and reasonable expectation that their PII would be protected and safeguarded and would not be lost, stolen, compromised, misused and/or disclosed to unauthorized users.

7.      On or about November 30, 2018, Marriott announced that hackers gained access to PII for approximately ***500 million*** guests who made reservations at Starwood properties from 2014 through September 10, 2018—marking potentially ***one of the largest data breaches of a single company in history*** (the "Data Breach").

8.      Marriott announced that it had learned of the Data Breach on September 8, 2018, when it "received an alert from an internal security tool regarding an attempt to access the

Starwood guest reservation database in the United States" and that "there had been unauthorized access to the Starwood network since 2014."

9.     Specifically, Marriott announced that:

> The company has not finished identifying duplicate information in the database, but believes it contains information on up to approximately 500 million guests who made a reservation at a Starwood property.  For approximately 327 million of these guests, the information includes some combination of name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ("SPG") account information, date of birth, gender, arrival and departure information, reservation date, and communication preferences.  For some, the information also includes payment card numbers and payment card expiration dates, but the payment card numbers were encrypted using Advanced Encryption Standard encryption (AES-128).   There are two components needed to decrypt the payment card numbers, and at this point, Marriott has not been able to rule out the possibility that both were taken.  For the remaining guests, the information was limited to name and sometimes other data such as mailing address, email address, or other information.

10.     Defendants negligently failed to implement, test and maintain reasonable cyber-security measures to safeguard Plaintiff's and Class members' PII.

11.     Moreover, despite learning of the Data Breach in early September, Defendants failed to notify Plaintiff and members of the Classes of the Data Breach or that their PII had been compromised for over two months.  During this time, Plaintiff and members of the Classes had no way of knowing of the Data Breach and no ability to mitigate the harm caused by the breach.

12.     Contrary to the reasonable expectations of Plaintiff and Class members, Defendants failed to reasonably maintain and protect Plaintiff and Class members' PII in a secure manner, in breach of their implied agreements, and in violation of their legal duties and state laws.

13.     In addition to Defendants' failure to adequately implement, test and maintain reasonable cyber-security measures to protect against the wrongful disclosure or compromise of

the PII, Defendants failed to timely detect and notify Plaintiff and Class members of the Data Breach in violation of their duties and applicable state data protection laws, including the Maryland Personal Information Protection Act, Md. Code. Com. Law § 14-3501, *et. seq.*

14.     Indeed, disclosure of the Data Breach took approximately four years from the date of the initial hack and more than two months after Defendants first became aware of the Data Breach.

15.     Due to Defendants' failure to properly safeguard Plaintiff's and Class members' PII and timely notify its users of the Data Breach, hackers may have had access to Plaintiff's and members of the Classes' PII for years undetected, exposing Plaintiff and members of the Classes to fraud, identity theft, and financial harm, and to a heightened imminent risk of such harm in the future.

16.     As a result of Defendants' wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer actual damages, including, *inter alia*, costs associated with mitigating the real and imminent risk of fraud and identity theft, such as costs for effective credit monitoring services and identity theft insurance, and other costs associated with re-issuing credentials.  Plaintiff and Class members are also entitled to statutory damages as a result of Defendants' wrongful conduct.

17.     Accordingly, Plaintiff, on behalf of herself and other members of the Class, asserts claims against Defendants for negligence and breach of implied contract, and a claim against Marriott for violation of Maryland's Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq.*  Plaintiff also asserts a claim on behalf of herself and members of the Pennsylvania Sub-Class against Defendants under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, *et seq.*

## PARTIES

18.     Plaintiff Debra Weinstein is a resident of Pennsylvania.  Plaintiff provided her Personal Identifying Information to Defendants to reserve hotel rooms.  Plaintiff Weinstein entrusted her Personal Identifying Information to Defendants with the reasonable expectation

and understanding that Defendants would protect and safeguard that information from compromise, disclosure, and/or misuse by unauthorized users.

19.     Defendant Marriott is a Delaware corporation with its principal place of business located at 10400 Fernwood Road, Bethesda, Maryland.  Marriott is a global provider of hotels and lodgings, with properties across the world.

20.     Defendant Starwood is a Maryland corporation with its principal place of business located at OneStar Point, Stamford, Connecticut. Starwood completed a merger agreement with Marriot on September 23, 2016.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this lawsuit has been brought as a class action on behalf of a proposed Class including millions of members, the aggregate claims of the putative Class members exceed $5 million exclusive of interest and costs, and one or more of the members of the putative Class are citizens of a different state than the Defendants.

22.     This Court has jurisdiction over Marriott because its principal place of business is located within this District, it conducts significant business in this District, has sufficient minimum contacts with the District, and much of the relevant conduct occurred in this District. This Court also has jurisdiction over Starwood because it was incorporated in the state of Maryland, it conducts significant business in this District, has sufficient minimum contacts with the District, and much of the relevant conduct occurred in this District.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Marriott resides within this District, Starwood was incorporated in the District, both Companies transact business, are found, and/or have agents in this District; a substantial part of the events giving rise to Plaintiff's and the Classes' claims arose in the District; and both Marriott and Starwood have sufficient contacts with Maryland and this District.

## FACTUAL ALLEGATIONS

24.     Marriott is a worldwide operator, franchisor, and licensor of hotel, residential, and timeshare properties in 129 countries and territories.  Marriot's more than 6,000 properties include brands such as the Ritz-Carlton, W Hotels, Courtyard, St. Regis, Sheraton Hotels & Resorts, Westin Hotels & Resorts, Element Hotels, Aloft Hotels, The Luxury Collection, Tribute Portfolio, Le Méridien Hotels & Resorts, Four Points by Sheraton, Design Hotels, and Starwood branded timeshare properties.

25.     On September 23, 2016, Starwood and Marriott completed a merger, in which Starwood became a wholly-owned subsidiary of Marriott and "part of the world's largest hotel company."

26.     To book a reservation with one of Defendants' hotels, guests, including Plaintiff and members of the Classes were required to provide, *inter alia,* name, mailing address, phone number, email address, employer details, loyalty account information, date of birth, gender, arrival and departure time, reservation date, communication preference and social media account ID, profile photo, and other data made available by linking the customers' social media and loyalty accounts.  Defendants also require their guests to provide their passport numbers and debit or credit card information.

27.     As required by Defendants, Plaintiff and members of the Classes provided their PII to Defendants, which was maintained in Defendants' guest reservation database.

28.     Plaintiff and Class members provided Defendants their PII with the understanding and reasonable expectation that Defendants would protect and safeguard the PII from compromise, disclosure, and/or misuse by unauthorized users.

29.     Contrary to the understanding and reasonable expectations of Plaintiff and Class members, Defendants failed to reasonably maintain Plaintiff's and Class members' PII in a secure manner and failed to safeguard the PII from compromise, disclosure and/or misuse by unauthorized parties, in violation of their legal duties, in breach of their implied agreements, and in violation of state laws.

30.     On or about November 30, 2018, Defendants announced a massive data breach affecting over 500 million customers who made a reservations at Starwood properties from 2014 through September 10, 2018—*potentially one of the largest data breaches in history*.

31.     According to Marriott, on September 8, 2018, Defendants received an alert from an internal security tool regarding an attempt to access the Starwood guest reservation database in the United States.

32.     Following the alert, Defendants conducted an investigation, during which they learned that there had been unauthorized access to the guest reservation database since 2014.

33.     Defendants also learned an unauthorized party had copied and encrypted information, and took steps toward removing it.

34.     It was not until November 19, 2018, that Defendants were able to decrypt the information and determined that the contents were from the Starwood guest reservation database.

35.     The Company disclosed that guest reservation database contained 327 million users' names, mailing addresses, phone numbers, email addresses, passport numbers, Starwood Preferred Guest account information, dates of birth, gender, arrival and departure information, reservation dates, and communication preferences.

36.     The database also included information regarding users' credit and debit card numbers, expiration dates and associated information.  Although the guest reservation database numbers were encrypted using two components needed to decrypt the payment card numbers, *Marriott could not rule out the possibility that both were stolen*.

37.     In response to the Data Breach, Marriot President and Chief Executive Officer, Arne Sorenson conceded: "We fell short of what our guests deserve and what we expect of ourselves."

38.     Defendants deceived and misled Plaintiff and the Class by announcing the Data Breach approximately four years from the date of the initial hack and over two months after Defendants became aware that an unauthorized party had attempted to access the guest reservation database.

39.     Had Defendants taken reasonable steps to protect and maintain the security of Plaintiff's and Class members' PII stored in their guest reservation database, they would have quickly detected the intrusion and could have alerted Plaintiff and members of the Classes to the Data Breach.

40.     Due to Defendants' failure to properly safeguard their customers PII and timely disclose the Data Breach, hackers may have accessed millions of accounts for years undetected, exposing Plaintiff and Class members to fraud, identity theft, and financial harm, and to a heightened imminent risk of such harm in the future.

41.     Following the Data Breach, *The Hill* reported that New York Attorney General Barbara Underwood's office was opening an investigation into the Data Breach, stating "New Yorkers deserve to know that their personal information will be protected."

42.     In a statement to *The Hill,* the New York Attorney General's office claimed, "[u]nder New York law, Marriott was required to provide notification to our office upon discovering the breach; they have not done so as of yet."

43.     Defendants knowingly collected and maintained the PII of Plaintiff and members of the Class, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused and/or disclosed to unauthorized parties.

44.     In addition, Defendants had a duty to protect and safeguard the PII of Plaintiff and members of the Class and to timely notify Plaintiff and members of the Class of the Data Breach under the Maryland Personal Information Protection Act, Md. Code. Com. Law § 14-3501, *et. seq.*

45.     Plaintiff and members of the Class entrusted their PII to Defendants with the understanding and reasonable expectation that Defendants would safeguard the PII from unauthorized access and/or use.

46.     It was foreseeable that if Defendants failed to take reasonable cyber-security measures, the PII of Plaintiff and members of the Class could be stolen, lost, misused, and/or

disclosed to unauthorized users. Defendants knew or should have known that Plaintiff's and Class members' PII was an attractive target for cyber attackers, particularly in light of highly-publicized prior data breaches, and Defendants failed to take reasonable precautions to safeguard the PII of its users, including Plaintiff and members of the Class.

47.    By failing to implement necessary cyber-security measures to protect its users' PII and by failing to timely notify Plaintiff and Class members of the Data Breach, Defendants departed from the reasonable standard of care and breached their duties to Plaintiff and members of the Class.

48.    Plaintiff and millions of Class members have been seriously harmed by Defendants' failure to implement proper cyber-security measures and safeguards to protect their PII. Sensitive and confidential information such as names, birthdates, email addresses, passport numbers, and credit card data has been stolen and is now (and for the past four years has been) in the hands of criminals to be bought, sold, or otherwise distributed for the purpose of misappropriating Plaintiff's and Class members' identities or property.

49.    As a result of Defendants' wrongful conduct, Plaintiff and Class members face a serious and immediate threat of identity theft, fraud, drained bank accounts, phishing, and opening and re-opening of accounts in their name.

50.    For example. Javelin Strategy & Research reported in a 2014 Identity Theft Study that "[d]ata breaches are the greatest factor for identity fraud."[1] In fact, "[i]n 2013, one in three customers who received notification of a data breach became a victim of fraud."[2] Fraudulent use of the information can continue for years.

51.    A primary concern for Plaintiff and members of the Class is a cybercriminal technique known as "credential stuffing," which works by using leaked username and password

---

[1] *A New Identity Fraud Victim Every Two Seconds in 2013 According to Latest Javelin Strategy & Research Study*, JAVELIN STRATEGY (Feb. 5, 2014), *available at* https://www.javelinstrategy.com/press-release/new-identity-fraud-victim-every-two-seconds-2013-according-latest-javelin-strategy.

[2] *Id.*

combinations at a number of websites in an attempt to gain unauthorized access to accounts. Given that the initial hack into Defendants' guest reservation system occurred over four years ago, the PII of Plaintiff and members of the Class may already have been used to hack other services and accounts.

52.     As a direct and proximate result of Defendants' breach of their legal duties, implied contracts with Plaintiff and members of the Class and violation of state data protection and consumer protection laws, Plaintiff and members of the Classes have suffered damages and will continue to suffer damages including, but not limited to:  (l) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants with the understanding that Defendants would safeguard their PII against theft and not allow access and misuse of their PII by others; (3) the compromise, disclosure, theft and/or misuse of their PII; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of PII; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and/or PII misuse; (6) the continued risk to their PII, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in their possession; and (7) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach.

53.     As a further result of Defendants' failure to provide adequate safeguards for Plaintiff's and Class members' PII and failure to timely notify Plaintiff and members of the Class that their PII was compromised, Plaintiff and members of the Class have been harmed in that they have been unable to take the necessary precautions to mitigate their damages by preventing future identity theft and/or fraud.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class and Sub-Class:

**Nationwide Class**: All persons whose PII was compromised as a result of the data breach announced by Marriott on or about November 30, 2018 (the "Nationwide Class" or "Class").

**Pennsylvania Class**: All persons residing in Pennsylvania whose PII was compromised as a result of the data breach announced by Marriott on or about November 30, 2018 (the "Pennsylvania Sub-Class" or "Sub-Class").

55.     Excluded from the proposed Class and Sub-Class are Defendants, as well as their agents, officers, and directors, and their families, as well as its parent companies, subsidiaries, and affiliates. Any judicial officer assigned to this case is also excluded. Plaintiff reserves the right to revise the definition of the Class and Sub-Class based upon subsequently discovered information.

56.     This action is brought and may be properly maintained as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

57.     The Classes are so numerous that joinder of all members is impracticable. Plaintiff believes that there are millions of proposed Class members throughout the United States.

58.     Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common questions of law and fact include but are not limited to:

a.      whether Defendants failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of the PII of Plaintiff and members of the Classes;

b.      whether Defendants compromised and/or disclosed by any means the PII of Plaintiff and members of the Classes;

c.      whether Defendants failed to act reasonably in securing PII of Plaintiff and members of the Classes;

d.      whether Defendants' conduct was negligent;

e.      whether Defendants breached their implied contracts with Plaintiff and members of the Classes by failing to protect the PII of Plaintiff and members of the Class;

f.      whether Defendants failed to timely notify Plaintiff and members of the Class of the Data Breach;

g.      whether Marriott violated Maryland's Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq.*; and

h.      whether Plaintiff and members of the Classes are entitled to actual damages, statutory damages, treble damages, punitive damages, restitution, restitutionary disgorgement, and/or other equitable or declaratory relief.

59.     Plaintiff's claims are typical of the claims of the Classes.  As alleged herein, Plaintiff and members of the Classes all sustained damages arising out of the same course of unlawful conduct by Defendant.

60.     Plaintiff is willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto.  Plaintiff will fairly and adequately protect the interests of the Classes and has no interests adverse to, or which conflict with, the interests of the other members of the Classes.

61.     Plaintiff has engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and the absent members of the Classes.

62.     Plaintiff's interests are co-extensive with, and not antagonistic to, those of the absent members of the Classes.  Plaintiff will undertake to represent and protect the interests of the absent members of the Classes.

63.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

64.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

65.     The interest of members of the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  Prosecution of the action through multiple representatives would be objectionable and Plaintiff anticipates no difficulty in the management of this matter as a class action.

## CLAIMS

### FIRST CLAIM
### NEGLIGENCE
### AGAINST DEFENDANTS ON BEHALF OF THE NATIONWIDE CLASS

66.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

67.     Defendants knowingly collected and maintained the PII of Plaintiff and members of the Class, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused and/or disclosed to unauthorized parties.

68.     Defendants also had a duty to protect and safeguard the PII of Plaintiff and members of the Class and to timely notify Plaintiff and members of the Class of the Data Breach under the Maryland Personal Information Protection Act, Md. Code. Com. Law § 14-3501, *et. seq.*

69.     Defendants owed Plaintiff and members of the Class a duty to take reasonable steps to maintain and protect against any dangers to Plaintiff's and members of the Class' PII presented by cyber-attackers.  This duty included, among other things, maintaining and testing their cyber-security systems, taking other reasonable security measures to protect and adequately secure PII of Plaintiff and members of the Class from unauthorized access, and taking reasonable steps to ensure that hackers did not compromise the systems and/or gain access to their users' PII.

70.     Defendants owed a duty of care to Plaintiff and members of the Class because it was foreseeable that they would be harmed by Defendants' inadequate cyber-security practices. By failing to implement necessary measures to protect the PII of Plaintiff and Class members,

Defendants departed from the reasonable standard of care and breached their duties to Plaintiff and members of the Class.

71.     It was foreseeable that if Defendants did not take reasonable security measures, the PII of Plaintiff and members of the Class could be stolen, lost, misused, and/or disclosed to unauthorized users. Defendants knew or should have known that its Plaintiff's and Class members' PII was an attractive target for cyber attackers, particularly in light of highly-publicized prior data breaches, and Defendants failed to take reasonable precautions to safeguard the PII of their customers, including Plaintiff and members of the Class.

72.     As a direct and proximate result of Defendants' failure to exercise reasonable care and deploy reasonable cyber-security measures, the PII of Plaintiff and members of the Class was accessed by cyber-attackers and can be used to commit identity theft and/or fraud.

73.     But for Defendants' failure to implement and maintain adequate cyber-security measures to protect Plaintiff's and member of the Class' PII, Plaintiff's and members of the Class' PII would not have been compromised, stolen, and/or disclosed to unauthorized users, Plaintiff and members of the Class would not have been injured, and Plaintiff and members of the Class would not be at a heightened future risk of identity theft and/or fraud.

74.     Defendants had and continue to have a duty to timely disclose that Plaintiff's and Class members' PII within its possession was compromised, lost, stolen, misused and/or disclosed to unauthorized parties and precisely the types of information compromised.

75.     Defendants unlawfully breached their duty to timely disclose to Plaintiff and members of the Class the fact that their PII was compromised, lost, stolen, misused and/or disclosed to unauthorized parties and precisely the type of information compromised.

76.     As a result of Defendants' negligence, Plaintiff and members of the Class have suffered damages including, but not limited to:  (l) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants with the understanding that Defendants would safeguard their PII against theft and not allow access and misuse of their PII by others; (3) the compromise, disclosure, theft and/or misuse of

their PII; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of PII; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the data breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and/or PII misuse; (6) the continued risk to their PII, which remains in Defendants' possession and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in its possession; and (7) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the data breach.

77.     As a further result of Defendants' negligence in failing to timely notify Plaintiff and members of the Class that their PII was compromised, Plaintiff and members of the Class have been harmed in that they have been unable to take the necessary precautions to mitigate their damages by preventing future identity theft and/or fraud.

## SECOND CLAIM
## BREACH OF IMPLIED CONTRACT
### AGAINST DEFENDANTS ON BEHALF OF THE NATIONWIDE CLASS

78.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

79.     Plaintiff and members of the Class entered into implied contracts with Defendants under which Plaintiff and members of the Class provided PII in order to reserve or purchase hotel rooms from Defendants with the understanding that Defendants agreed to safeguard and protect that PII and would timely notify Plaintiff and Class members of any unauthorized access to their PII.

80.     Plaintiff and members of the Class would not have provided their PII to Defendants without the understanding that Defendants would protect and safeguard their PII and timely notify Plaintiff and Class members of any unauthorized access to their PII.

81.     Defendants breached their implied contracts with Plaintiff and Class members by failing to safeguard the PII of Plaintiff and members of the Class and by permitting the compromise and/or disclosure of that PII to unauthorized users.

82.     Further, Defendants breached their implied contracts with Plaintiff and Class members by failing to timely notify Plaintiff and Class members of the Data Breach and unauthorized access to their PII.

83.     As a direct and proximate result of Defendants' breaches of their implied contracts with Plaintiff and members of the Class, Plaintiff and members of the Class have suffered damages and will continue to suffer damages including, but not limited to:  (l) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants with the understanding that Defendants would safeguard their PII against theft and not allow access and misuse of their PII by others; (3) the compromise, disclosure, theft and/or misuse of their PII; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of PII; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the data breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and/or PII misuse; (6) the continued risk to their PII, which remains in Defendants' possession and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in their possession; and (7) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the data breach.

84.     As a further result of Defendants' breach of their implied contracts with Plaintiff and Class members by failing to timely notify Plaintiff and members of the Class that their PII was compromised, Plaintiff and members of the Class have been harmed in that they have been unable to take the necessary precautions to mitigate their damages by preventing future identity theft and/or fraud.

## THIRD CLAIM
## VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT,
## MD. CODE ANN., COM. LAW § 13-101 *ET SEQ*
## AGAINST MARRIOTT ON BEHALF OF THE NATIONWIDE CLASS

85.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

86.     Plaintiff brings this claim on behalf of herself and members of the nationwide Class.

87.     Plaintiff and members of the Class are consumers within the meaning of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq.* ("MCPA") who transacted with and provided PII to Defendants. *See* Md. Code Ann., Com. Law § 13-101(c).

88.     Marriott is a person and merchant within the meaning of Md. Code Ann., Com. Law § 13-101(g), (h).

89.     At all relevant times, Marriott has maintained its principal place of business and substantial operations in the State of Maryland, and has regularly conducted business throughout the State of Maryland.

90.     The MCPA prohibits unfair, abusive, or deceptive trade practices. Defendants have violated the MCPA in at least the following ways: (1) by failing to implement, test and maintain appropriate cyber-security measures; (2) by failing to protect and safeguard the PII of Plaintiff and members of the Class from being lost, stolen, compromised, misused and/or disclosed to unauthorized users; (3) by failing to timely disclose to Plaintiff and members of the Class that their PII was compromised, lost, stolen, misused and/or disclosed to unauthorized parties and precisely the type of information compromised; and (4) by violating MD Code Ann., Com. Law, § 14-3501, *et. seq.*

91.     Defendants have engaged in unfair, abusive or deceptive trade practices within the meaning, and in violation of, the MCPA in that: (1) Defendants' wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures are substantially injurious to Plaintiff and the Class, offend public policy, and/or are unfair, immoral,

abusive, unethical, oppressive, deceptive and/or unscrupulous; (2) any justification for Defendants' conduct would be outweighed by the gravity of the injury to Plaintiff and the Class; (3) there were reasonably available alternatives to further Defendants' legitimate business interests other than engaging in the above-described wrongful conduct; and (4) Defendants' conduct violates common and statutory law as alleged herein, including MD Code Ann., Com. Law, § 14-3501, *et. seq.*

92.     Defendants further violated MCPA § 13-301(3) by failing to state a material fact, a failure which deceives or tends to deceive.   As alleged herein, Defendants' conduct, nondisclosures and misleading statements were false, misleading and likely to deceive Plaintiff and members the Class in violation of the MCPA.

93.     Defendants violated MCPA § 13-301(9)(i) by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts relating to the collection of PII in connection with the sale of hotel rooms with the intent to deceive Plaintiff and members of the Class.

94.     Plaintiff and members of the Class would not have provided their PII to Defendants without the understanding that Defendants would protect and safeguard their PII. In violation of the MCPA, Defendants engaged in deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts suppression and omission of material facts concerning their collection and safeguarding of Plaintiff's and Class members' PII in connection with the sale of hotel rooms.

95.     Defendants' misrepresentations and fraudulent omissions were material to Plaintiff and members of the Class. Had Defendants disclosed that the PII was not safeguarded and was subject to access by unauthorized users, Plaintiff and members of the Class would not have provided their PII to Defendants.

96.     As a direct and proximate result of Defendants' unlawful, unfair and/or fraudulent conduct in violation of the MCPA, Plaintiff and Class members have suffered injury in fact and will continue to be injured.  Further, as a direct and proximate result of Defendants' violation of

the MCPA, Plaintiff and Class members incurred actual damages, including, *inter alia*, expenses associated with monitoring their PII to prevent identity theft and/or fraud.

97.     As a result of Defendants' unfair and deceptive trade practices, Plaintiff and members of the Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief, including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

**FOURTH CLAIM**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW**
**73 PA. CONS. STAT. § 201-1, *ET SEQ.***
**AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF AND THE PENNSYLVANIA SUB-CLASS**

98.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

99.     Plaintiff asserts this count on behalf of herself and the members of the Pennsylvania Sub-Class.

100.    Plaintiff and members of the Pennsylvania Sub-Class are persons within the context of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, *et seq.* (hereinafter "Pennsylvania UTPCPL"), specifically § 201-2(2).

101.    Defendants are persons within the context of Pennsylvania UTPCPL, § 201-2(2).

102.    Defendants are engaged in trade and commerce within the context of Pennsylvania UTPCPL, § 201-2(3).

103.    Plaintiff and members of the Pennsylvania Sub-Class purchased hotel rooms from Defendants for personal, family or household use.

104.    The Pennsylvania UTPCPL prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce ...." 73 P.S. § 201-3.

105.    As alleged herein, Defendants committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of the Pennsylvania UTPCPL.

106.    Defendants engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of Pennsylvania UTPCPL, § 201-2(4)(xxi).

107.    Defendants have violated  the Pennsylvania UTPCPL in at least the following ways:

(1) by failing to implement, test and maintain appropriate cyber-security measures; (2) by failing to protect and safeguard the PII of Plaintiff and members of the Class from being lost, stolen, compromised, misused and/or disclosed to unauthorized users; and (3) by failing to timely disclose to Plaintiff and members of the Class that their PII was compromised, lost, stolen, misused and/or disclosed to unauthorized parties and precisely the type of information compromised. The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to Plaintiff and members of the Pennsylvania Sub-Class (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

108.    Defendants have engaged in unfair, abusive or deceptive trade practices within the meaning, and in violation of, the Pennsylvania UTPCPL in that: (1) Defendants' wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures are substantially injurious to Plaintiff and members of the Pennsylvania Sub-Class offend public policy, and/or are unfair, immoral, abusive, unethical, oppressive, deceptive and/or unscrupulous; (2) any justification for Defendants' conduct would be outweighed by the gravity of the injury to Plaintiff and the Class; (3) there were reasonably available alternatives to further Defendants' legitimate business interests other than engaging in the above-described wrongful conduct; and (4) Defendants' conduct violates common and statutory law as alleged herein.

109.    Defendants further violated the Pennsylvania UTPCPL by failing to state a material fact, a failure which deceives or tends to deceive or create confusion.  As alleged herein, Defendants' conduct, nondisclosures and misleading statements were false, misleading and likely

to deceive or create confusion in Plaintiff and members of the Pennsylvania Sub-Class in violation of the Pennsylvania UTPCPL.

110.    Defendants further violated the Pennsylvania UTPCPL by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts relating to the collection of PII in connection with the sale of hotel rooms with the intent to deceive Plaintiff and members of the Pennsylvania Sub-Class.

111.    Plaintiff and members of the Pennsylvania Sub-Class would not have provided their PII to Defendants without the understanding that Defendants would protect and safeguard their PII. In violation of the Pennsylvania UTPCPL, Defendants engaged in deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts suppression and omission of material facts concerning their collection and safeguarding of Plaintiff's and members of the Pennsylvania Sub-Class' PII in connection with the sale of hotel rooms.

112.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff and members of the Pennsylvania Sub-Class. Had Defendants disclosed that the PII was not safeguarded and was subject to access by unauthorized users, Plaintiff and members of the Pennsylvania Sub-Class would not have provided their PII to Defendants.

113.    As a direct and proximate result Defendants' unlawful, unfair and/or fraudulent conduct in violation of the Pennsylvania UTPCPL, Plaintiff and members of the Pennsylvania Sub-Class have suffered injury in fact and will continue to be injured.

114.    As a direct and proximate result of Defendants' violation of the Pennsylvania UTPCPL, Plaintiff and members of the Pennsylvania Sub-Class incurred actual damages, including, inter alia, expenses associated with continued monitoring of their PII to prevent identity theft and/or fraud.

115.    Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiff and members of the Pennsylvania Sub-Class are entitled to restitution, disgorgement, statutory, treble and actual monetary damages as permitted by law, including interest, costs, and attorneys' fees. Plaintiff

and members of the Pennsylvania Sub-Class are also entitled to injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from engaging in further deceptive acts and practices described in this complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants and in favor of Plaintiff and the Class and Sub-Class, and award the following relief:

a. that this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class and Sub-Class, and Plaintiff's counsel as counsel for the Class and Sub-Class;

b. award Plaintiff and members of the Classes appropriate relief, including actual damages, statutory damages, treble damages, punitive damages, and restitutionary disgorgement;

c. award equitable and declaratory relief as may be appropriate, including without limitation extended credit monitoring services and identity theft protection for Plaintiff and members of the Classes;

d. award all costs of prosecuting the litigation, including expert fees;

e. award pre- and post-judgment interest;

f. award attorneys' fees; and

g. grant such additional relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury.

DATED: November 30, 2018                         Respectfully submitted,

*/s/ Thomas J. Minton*
Thomas J. Minton (Bar No. 03370)
Goldman & Minton, P.C.
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
Telephone: (410) 783-7575
Facsimile: (410) 783-1711
tminton@charmcitylegal.com

**KESSLER TOPAZ**
**MELTZER & CHECK LLP**
Joseph H. Meltzer
Naumon A. Amjed
Melissa L. Troutner
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
namjed@ktmc.com
mtroutner@ktmc.com

*Attorneys for Plaintiff Debra Weinstein and the proposed Classes*